UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD DEFOREST,<br>KATHLEEN DEFOREST,<br>    Plaintiffs,<br><br>    v.<br><br>BANK OF NEW YORK MELLON,<br>BANK OF AMERICA, N.A., DOES 1<br>THROUGH 100 INCLUSIVE, and<br>SHELLPOINT MORTGAGE SERVICING,<br>    Defendants. | No. 3:17-cv-01504-VAB |

**RULING AND ORDER ON MOTION TO DISMISS**

Richard DeForest and Kathleen DeForest ("Plaintiffs") filed this lawsuit *pro se*, alleging that Defendants violated their rights related to a series of mortgages on the DeForests' primary residence in Darien, Connecticut. *See generally* Compl., ECF No. 1. Defendants now move to dismiss the Complaint in its entirety, with prejudice. Defs. Mot. to Dismiss ("Defs. Mot."), ECF No. 10.

For the reasons stated below, Defendants' motion is **GRANTED** and the case is dismissed with prejudice. The Court will also construe Plaintiffs' Response, ECF No. 22, as a motion for leave to amend the complaint. That request is **DENIED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The DeForests are residents of Darien, Connecticut. Compl. ¶ 4. Defendants — the Bank of New York Mellon, the Bank of America, and Does 1 through 100 ("Defendants") — are banks or bank employees allegedly involved with the DeForests' mortgage on their primary residence. Compl. ¶¶ 5-10, 11.

1

A. **Factual Allegations**

The DeForests allege that they purchased the property at 17 Fitch Ave in Darien, Connecticut on August 4, 2004. Compl. ¶¶ 11, 42. They also allege that they "refinanced" their mortgages on the property at that time, and received a first mortgage of $515,000 and a second mortgage of $125,000. Compl. ¶ 11. Additionally, they allege that there was an earlier, prior mortgage of $80,000 "that is still a lien of record . . . ." *Id.* In connection with the mortgages, they allege that "America's Wholesale Lender (Countrywide) placed Plaintiffs in a predatory loan with an adjustable rate" but that "America's Wholesale Lender has never been licensed to do business in Ct. and Plaintif[fs] contend this loan is void." *Id.* They claim that Countrywide "illegally, deceptively, and/or otherwise unjustly qualified Plaintiffs for a loan which Countrywide knew or should have known that Plaintiffs could not qualify for or afford." *Id.* ¶ 39.

The DeForests allege that at some point Countrywide assigned the loan to Defendant Bank of New York Mellon, but they allege that they "did not receive proper notice of the two assignments or transfer of their loan from Countrywide to the Bank of New York Mellon or the servicer Bank of America." *Id*. ¶ 36. They claim that Defendant Bank of America is the current servicer on the loan. *Id*. ¶ 33. Additionally, they claim they have "attempted a series of attempts to get a loan modification, all of which were repeatedly delayed due to lost paperwork, claimed 'incomplete' paperwork, and repeated re-assigned to new loan officers." *Id.* ¶ 38.

The Deforests[1] allege that a forensic audit was performed on the property in 2016, revealing that there was a "break in the chain of title" and "there was no assignment of the

---

[1] The majority of the Complaint contains what appears to be information from a private investigator named William Paatalo who "was retained by Richard DeForest to review the chain of title for the Mortgage Deed which is the subject of this action, and to render any opinions regarding defects in the chain of title." *Id.* ¶¶ 13, 32.

Mortgage from America's Wholesale Lender (Countrywide) to Bank of New York Mellon, Bank of America, or any either trust or servicer." *Id* ¶ 12. They allege that the original lender — America's Wholesale Lender — was a fictitious entity "used to conceal the identity of the actual lender" and that the actual lender is unknown. *Id*. ¶ 15(a). They allege that this demonstrates that the "chain of title is clouded and defective." *Id*. ¶ 15(b). Furthermore, they allege that "[a]t all times material hereto Defendants knew of America's Wholesale Lender's actions and participated in them" and that the Bank of America "was the successor in interest to America's Wholesale was responsible for the actions of Countrywide." *Id*. ¶¶ 40-41

### B. Procedural History

The DeForests filed the initial complaint *pro se* on September 7, 2017. The Complaint included twelve separate counts:

1. Count I alleges that Defendants "do not have an equitable right to foreclose on the Property because Defendants . . . have failed to perfect any security interest in the Real Property collateral" and that the "Deed of Trust is a nullity by operation of law." Compl. ¶¶ 44-45. Additionally, Plaintiffs allege that "Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage." Compl. ¶¶ 46-56.

2. Count II alleges "fraud in the concealment" against the Bank of New York Mellon, alleging that the bank "concealed the fact that they were not a Federal Reserve Depository Bank." *Id*. ¶¶ 57-67.

3. Count III alleges "fraud in the inducement" against all Defendants, claiming that "Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust" and

3

"misrepresented that they are the 'holder and owner' of the Tangible Note . . . ." *Id.* ¶¶ 68-75.

4. Count IV appears to allege that loan documents were an "unconscionable contract." *Id.* ¶¶ 76-83. Plaintiffs claim that the Bank of New York Mellon's actions "resulted in Plaintiff being forced, tricked, and mislead into parting with their property." *Id.* ¶ 77.

5. Count V alleges breach of contract against Bank of New York Mellon. *Id.* ¶¶ 84-88.

6. Count VI alleges that Bank of New York Mellon "failed to disclose to Plaintiff that they were not the legitimate creditor," and was "acting not in the best interest of the grantor of the Mortgage/Deed of Trust" and therefore "failed to adhere to their Fiduciary Duties." *Id.* ¶¶ 91, 94.

7. Count VII seeks to quiet title. *Id.* ¶¶ 95-101.

8. Count VIII alleges a "grave error Slander of Title causing special damage." *Id.* ¶ 109.

9. Count IX seeks declaratory relief and Plaintiffs "request[] a judicial determination of the rights, obligations and interest of the parties with regard to the subject property" and "seek[] to quiet title . . . ." *Id.* ¶¶ 112-114.

10. Count X alleges violations of the Connecticut Homeowner's Protection Bill, Conn. Gen. Stat. § 49-31k *et seq*.

11. Count XI alleges violation of the Consumer Credit Protection Act, 15 U.S.C. § 1461, because Defendants failed to disclose the "purported assignments/transfer of the Promissory Note and DOT." *Id.* ¶ 155.

12. Count XII alleges violations of 12 C.F.R. § 1024.41. *See id.* ¶¶ 156-167. Plaintiffs appear to allege various violations related to an unspecified application for a loan modification. *Id.* ¶ 161.

On November 14, 2017, Defendants moved to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defs. Mot. at 1; *see also* Def. Mem. in Support, ("Def. Mem."), ECF No. 10-1. They argue that Mr. DeForest lacks standing to bring claims because he received a discharge in a Chapter 7 bankruptcy proceeding in 2016, and the Court therefore lacks subject matter jurisdiction over the claims. Defs. Mot. at 2. Second, they argue that claims related to a putative foreclosure action are not justiciable because the banks have not initiated any foreclosure action. *Id*. Third, they argue that Plaintiffs fail to set forth the necessary elements of each claim and the Complaint is vague and conclusory. Defendants argue dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

On December 22, 2017, Plaintiffs filed a response. *See generally* Pl. Resp. In Opp. to Defs. Mot. to Dismiss ("Pl. Resp."), ECF No. 22. The DeForests argue that they have standing, despite the bankruptcy proceeding, because "his claims were brought up and claimed in the bankruptcy" and therefore deemed abandoned by the trustee. *Id.* at 5. Plaintiffs state, however, that "[i]n reality, after considering what is stated within the MTD, Plaintiffs realize that only an Amended Complaint will keep this case within the Court." *Id.* at 7. They therefore request the Court "Deny Dismissal, allow Plaintiffs one week to file their Amended Complaint, and the Court have this case move forward." *Id.* at 9.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, a court "must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citations omitted).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of any claim that fails "to state a claim upon which relief can be granted." In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id*. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Instead, a plaintiff must allege facts that "nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002). The proper consideration is not whether the plaintiff ultimately will

prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he or she should be entitled to offer evidence to support his claim. *See id*. (citation omitted). Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

B. **Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course or, once the time period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Amendments as a matter of course do not require court approval, provided that the amended complaint is filed within 21 days after serving the initial complaint or within 21 days after a responsive pleading or filing of a motion to dismiss. Fed. R. Civ. P. 15(a)(1).

Parties who fail to file an amended complaint within 15(a)(1)'s time period, or who seek additional amendments, may seek the consent of their opposing party or the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The Federal Rules require that the "court should freely give leave when justice so requires." *Id*. Leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to

7

dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (internal citations omitted). Other grounds include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Stiller v. Colangelo*, 221 F.R.D. 316, 317 (D. Conn. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. DISCUSSION

Defendants have moved to dismiss the complaint on several separate grounds. First, they argue that the DeForests lack standing to assert claims that predated a bankruptcy proceeding and that they failed to disclose in that proceeding. They argue that dismissal is therefore warranted under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, Defendants argue dismissal is appropriate under 12(b)(1) for any claims involving foreclosure, as the property at issue has never been subject to a foreclosure action. Finally, they argue that plaintiffs have failed to state a claim for which relief can be granted under Rule 12(b)(6) and therefore dismissal is warranted.

The Court will address Defendants' standing arguments, as standing strikes at the heart of this Court's subject matter jurisdiction. The Court concludes the case must be dismissed with prejudice.

#### A. Standing

Defendants argue that the DeForests lack standing to assert any claims in the Complaint because each claim accrued prior to a Chapter 7 bankruptcy proceeding. Def. Mem. at 7-8. They argue that only the bankruptcy trustee would have standing to bring the pre-petition claims, not Mr. and Mrs. DeForest. Def. Mem. at 7-8; Defs. Rep. at 6-7. In response, the DeForests argue that the claims "were brought up and claimed in the bankruptcy" and should therefore be deemed

abandoned by the trustee. Pl. Resp. at 5 (quoting *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten*, LLP, No. 13-cv-2747 (GBD)(FM), 2014 WL 4061157 (S.D.N.Y. July 11, 2014), report and recommendation adopted, No. 13-civ-2747 (GBD)(FM), 2014 WL 3974584 (S.D.N.Y. Aug. 13, 2014); *Beckford v. Bayview Loan Servicing*, LLC, No. 14-cv-249 (VAB), 2017 WL 2588084, at *1 (D. Conn. June 14, 2017)).

### 1. Standing and the Pre-Petition Claims

This Court, like all federal courts, is a court of limited jurisdiction, and it only has the authority to consider the merits of claims that a plaintiff has standing to bring. *McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 600 Fed.Appx. 807, 808 (2d Cir. 2015) (noting in *pro se* appeal that "[a]s a threshold inquiry, a federal court must determine that the plaintiff has constitutional Article III standing prior to determining issues of statutory standing or the subsequent merits of the case."); *Beckford v. Bayview Loan Servicing, LLC*, No. 14-cv-249 (VAB), 2017 WL 2588084, at *3 (D. Conn. June 14, 2017) (same). A plaintiff bears the burden of showing that he or she has standing to sue and, if the Court determines the plaintiff does not have standing, the district court will "properly dismiss[ the] action for lack of subject matter jurisdiction." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (internal quotation marks omitted).

The Bankruptcy Code provides that "[t]he commencement of a [bankruptcy proceeding] creates an estate," which includes "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy proceeding. *See* 11 U.S.C. § 541(a) (detailing creation of bankruptcy trust). The estate reaches "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative . . . . Contractual rights clearly fall within the reach of this section, . . . as do causes of action owned by the debtor or arising from property

9

of the estate. . . ." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal citations and quotations omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484 (2d Cir. 2014) ("It is a given, of course, that under provisions generally applicable to all bankruptcy cases, the commencement of the proceeding creates a bankruptcy estate. . . . Such estate encompasses, inter alia, with few exceptions, all legal or equitable interests of the debtor in property as of the commencement of the case.") (internal citations and quotations omitted).

Once a particular claim belongs to the bankruptcy estate, the bankruptcy trustee has standing to litigate that claim on behalf of the estate. *Cf. Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) ("Pursuant to § 323(a) and (b), the trustee is the representative of the estate and has capacity to sue and be sued."). An individual debtor proceeding under Chapter 7 of the Bankruptcy Code, however, no longer has standing to assert pre-petition claims unless those claims were disclosed in the petition and not pursued by the estate. *See Olick*, 145 F.3d at 515 ("[W]e conclude that a Chapter 13 debtor, unlike a Chapter 7 debtor, has standing to litigate causes of action that are not part of a case under title 11."); *Beckford*, 2017 WL 2588084, at *4 ("To the extent that a plaintiff's claims belong to his or her Chapter Seven bankruptcy estate, the party will no longer have standing to bring those claims."); *Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 244 (D. Conn. 2016) ("[B]ecause an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claim after emerging from bankruptcy.") (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 103 (S.D.N.Y.1996)).

In similar cases, courts in this District have regularly dismissed pre-petition claims, finding that the individual plaintiff lacked standing and therefore that the Court lacked subject

matter jurisdiction over those claims. *See, e.g., Omotosho*, 136 F.Supp.3d at 243-246 (dismissing all pre-petition claims, including conspiracy and fraud claims, unconscionability, and challenges to closure against mortgage companies, which arose prior to plaintiff's Chapter 7 bankruptcy petition and had not been disclosed); *Beckford*, 2017 WL 2588084 at *4-5 ("Because Mr. Beckford's Amended Complaint is entirely based on claims that arose prior to his petition for bankruptcy, which was filed on April 19, 2013, all of his claims belong to his bankruptcy estate and he does not have standing to bring any of those claims.").

### 2. The Claims at Issue Here

Defendants note that Mr. DeForest has filed seven bankruptcy petitions, and that the seventh is proceeding under Chapter 13 and remains active. Def. Br. at 5. It appears, however, that Mr. DeForest had previously filed a discharge petition under Chapter 7 in 2015. *See* Chapter 7 Voluntary Petition*,* ECF No. 1 *In re Richard F. DeForest*, No. 15-51460 (Bankr. D. Conn. filed September 29, 2015) ECF No. 1.[2] The Bankruptcy Court granted a discharge under Chapter 7 on July 6, 2016. Order Discharging Debtor, *In re Richard F. DeForest*, No. 15-51460 (Bankr. D. Conn. filed July 6, 2015), ECF No. 41.

Given the bankruptcy proceeding, the DeForests would retain standing to assert two categories of claims. First, they might have standing to assert any claim after the bankruptcy petition was discharged, i.e., July 6, 2016. *Omotosho*, 136 F. Supp. 3d at 244 ("The plaintiff filed

---

[2] When considering a motion to dismiss, the Court consider matters of which it could take judicial notice. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (noting under Rule 12(b)(6) a court may consider documents appended to the complaint, incorporated in the complaint by reference, or to matters of which judicial notice may be taken). Bankruptcy court filings are public records and therefore judicial notice is appropriate. *Cf. In re Howard's Exp., Inc.,* 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of bankruptcy court docket and filings).

11

for bankruptcy on April 22, 2014. Thus, all unscheduled claims in the Complaint that accrued prior to April 22, 2014 are part of the bankruptcy estate and may not be asserted by the plaintiff."). Second, they might retain standing to assert any claims that were properly disclosed and scheduled in the bankruptcy proceeding, but remained administered at the close of the proceeding and therefore abandoned by the estate. *See Chartschlaa*, 538 F.3d at 122 ("Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets: While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed."); *Goldson*, 2014 WL 4061157, at *4 ("Chapter 7 debtors may have standing to pursue claims that have been abandoned by the trustee, but do not have standing to pursue claims that remain part of the bankruptcy estate.").

### a. Accrual of Claims

Each claim at issue in this case appears to arise before the filing of the Chapter 7 petition in 2015. Courts in this District have noted that:

> In order to determine whether a debtor had a property interest in a cause of action at the time he filed for bankruptcy, we look to state law. In Connecticut, a cause of action accrues when a plaintiff suffers actionable harm. The fact that this accrual date may be different than the date on which the statute of limitations begins to run is irrelevant.

*Omotosho*, 136 F. Supp. 3d at 244 (quoting *Calabrese v. McHugh*, 170 F.Supp.2d 243, 257 (D.Conn. 2001)).

The Complaint and attached exhibits primarily detail events that occurred between 2004 and 2013. According to the Complaint, the mortgages were issued in 2004. *See, e.g.* Compl. ¶ 27 (noting two dates in 2014); *see also id.* ¶ 15 (a) (noting "subject loan was originated on August

12

4, 2004"). The Complaint alleges that there were "a lack of assignments occurring since 2004" but also that there were "two assignments or transfer of their loan from Countrywide to the Bank of New York Mellon or the servicer Bank of America." *Id.* ¶ 36. The Complaint does not provide a date under which the assignments occurred, but instead alleges that the DeForests were not given correct notice. *Id.* A letter attached to the Complaint, however, suggests that the Bank of America was already servicing the mortgage by November 18, 2013. *See* Letter from Louise Bowes to Richard F. Deforest & Kathleen J. DeForest, Compl., Ex. 1, ECF No. 1. Additionally, Defendants have submitted documentation that the assignment of the mortgage was recorded in Darien on June 22, 2012. *See* Assignment of Mortgage, Def. Mot., Ex. 2, ECF No. 10-2.[3]

At the latest, then, the allegations in the Complaint would have accrued nearly two years before Mr. DeForest petitioned the bankruptcy court for discharge on September 29, 2015. *See* Chapter 7 Voluntary Petition*, In re Richard F. DeForest*, No. 15-51460 (Bankr. D. Conn. filed September 29, 2015), ECF No. 1. Each claim therefore is properly considered a pre-petition claim and Plaintiffs will lack standing unless they disclosed the claims to the bankruptcy court. *Accord Omotosho*, 136 F.Supp.3d at 244-46; *Beckford*, 2017 WL 2588084 at *4-5.

b.  Disclosure in Bankruptcy Proceeding

The DeForests do not appear to contest the timing of the claims at issue here. Instead, they argue that the claims at issue here "were brought up and claimed in the bankruptcy" and

---

[3] When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)

therefore the claims were abandoned by the trustee. Pl. Resp. at 5. Mr. That assertion is contradicted by the record in the bankruptcy proceeding.

On November 13, 2015, Mr. DeForest, through his attorney, filed a summary of schedules related to the bankruptcy estate. *See* Summary of Schedules, *In re Richard F. DeForest*, No. 15-51460 (Bankr. D. Conn. filed July 6, 2015), ECF No. 9. In Schedule A, Mr. DeForest listed the property at issue in this case and valued the secured claim at $768,598.59. *Id.* at 3. In Schedule B, Mr. DeForest then checked the box next to "none" when asked if he had any "[e]quitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A — Real Property." *Id.* at 4.

Had Mr. DeForest disclosed the claims, he would have listed them in Schedule B. *Accord*. *Omotosho*, 136 F.Supp.3d at 244-46 (dismissing fraud claims related to foreclosure because each claim was not disclosed on plaintiff's Schedule B form in prior bankruptcy proceeding); *Beckford*, 2017 WL 2588084, at *5 (affirming dismissal where plaintiff "had not listed these causes of action . . . in the asset schedules that he submitted with his Voluntary Petition" under Chapter 7). His failure to do so renders them "undisclosed assets" that "automatically remain property of the estate after the case is closed." *Chartschlaa*, 538 F.3d at 122.

As a result, the claims at issue in this lawsuit are all pre-petition claims and were not disclosed to the bankruptcy trustee. Plaintiffs lack standing to assert them, and the Court therefore lacks subject matter jurisdiction. Defendants' motion to dismiss is granted.[4]

### B. Leave to Amend

---

[4] Because the Court concludes Plaintiffs lack standing and the Court lacks subject matter jurisdiction, it does not address Defendants' other arguments.

The DeForests asserted that they had standing to assert the claims, but that, in order to respond to Defendants' other arguments, they would need to file an amended complaint. *See, e.g.,* Pls. Resp. at 7 ("Plaintiffs realize only now, that many of their causes of action must be reworded . . . . If Plaintiffs had time to Amend, as their Response to the Motion to Dismiss, would be ideal, but the untimeliness of their Response prevents them from filing the Amended Complaint."); *id.* at 9 ("Plaintiffs Pray that this Honorable Court will Deny Dismissal, allow Plaintiffs one week to file their Amended Complaint, and the Court have this case move forward."). While labeled as a responsive brief, the Court liberally construes Plaintiffs' response as a motion to amend under Rule 15 of the Federal Rules of Civil Procedure. It will deny the request as futile.

The time for amendment as of right has lapsed, and so the DeForests may only amend by consent or with leave of the Court. Fed. R. Civ. P. 15(a)(1). As addressed above, Rule 15 requires that leave be given "freely." Fed. R. Civ. P. 15(a)(2). But leave may be denied in cases where amendment would be futile, such as when a proposed amended complaint would not survive a motion to dismiss. *Lucente*, 310 F.3d at 258 (internal citations omitted).

Here, the Court has determined that it lacks subject matter jurisdiction. The Plaintiffs might attempt to replead their allegations, but no set of facts would give them standing over claims that properly are part of the bankruptcy estate. Plaintiffs would continue to lack standing, and the Court subject matter jurisdiction. Amendment therefore would be futile. *Accord. Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (noting that, while "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend[,]" amendment would be futile because district court properly found plaintiff lacked standing).

The DeForests' request for leave to amend therefore is denied.

**IV.     CONCLUSION**

Defendants' motion to dismiss, ECF No. 10 is **GRANTED**. Plaintiff's response, ECF No. 22, is construed as a motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2) and **DENIED**.

The case is dismissed with prejudice, and the Clerk of Court is respectively requested to close the file.

SO ORDERED this 27th day of August, 2018, in Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE